# In the United States Court of Federal Claims

No. 14-1012V

(Filed: March 30, 2016)
(Reissued: April 14, 2016)

| | | |
|---|---|---|
| ****************************************** ) | | Vaccine case; review of an award |
| ) | | of interim attorneys' fees; 42 U.S.C. |
| **GARRY REHN,** ) | | § 300aa-15(e)(1); good faith; reasonable |
| ) | | basis for petition; discretionary basis for |
| **Petitioner,** ) | | award |
| ) | | |
| **v.** ) | | |
| ) | | |
| **SECRETARY OF HEALTH AND** ) | | |
| **HUMAN SERVICES,** ) | | |
| ) | | |
| **Respondent.** ) | | |
| ) | | |
| ****************************************** | | |

Phyllis Widman, Neptune, New Jersey, for petitioner.

Randall Knutson, Knutson and Casey Law Firm, Mankato, Minnesota, on behalf of himself as former attorney for petitioner.

Adriana Teitel, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C. for respondent.  With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Rupa Bhattacharyya, Director, Vincent J. Matanoski, Deputy Director, and Voris E. Johnson, Jr., Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Judge.

The Secretary of Health and Human Services ("government" or "respondent") requests that this court review a special master's decision awarding interim attorneys' fees and costs to Mr. Randall Knutson.  *See* Resp't's Mem. in Support of Her Mot. for Review ("Resp't's Mot."), ECF No. 40 (seeking reversal of *Rehn v. Sec'y of Health & Human Servs.*, No. 14-1012V, 2015 WL 9412813 (Fed. Cl. Spec. Mstr. Dec. 1, 2015)).  The case was initiated on October 20, 2014, when Mr. Knutson filed a petition on behalf of Mr. Rehn alleging that he had been injured by an

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B ("Vaccine Rules"), Rule 18(b), this opinion and order is being initially filed under seal.  By rule, the parties have fourteen days in which to propose redactions.

influenza vaccine administered on October 26, 2011 and seeking compensation for the injury. Within a few days after filing the petition, Mr. Knutson submitted voluminous medical records. He also represented Mr. Rehn at several hearings and status conferences and sought opinions on causation from treating physicians and experts.  In June 2015, at Mr. Rehn's request, Mr. Knutson withdrew as counsel for Mr. Rehn and was replaced by Ms. Widman, who has since pursued the case on behalf of Mr. Rehn.  During the course of the continued proceedings relating to Mr. Rehn's claim, Mr. Knutson requested an award of interim fees and costs from the special master, who granted the request.  Because the special master correctly applied the law and properly exercised her discretion in making the award under the circumstances of this case, the court denies the government's motion for review.

## BACKGROUND

### A. *Mr. Rehn's Medical History*

Mr. Rehn has a complex medical history.  Prior to receiving the vaccination at issue in this case, Mr. Rehn had elevated triglycerides, anxiety, hypertension, sleep apnea, lipid disorder, muscle cramps, and a herniated disc.  *Rehn*, 2015 WL 9412813, at *2 (citing medical records, ECF No. 7 (Nov. 4, 2014) and ECF No. 18 (July 31, 2015)).  On May 25, 2011, he was diagnosed with chronic pain syndrome.  *Id.*  Roughly five months later, on October 26, 2011, he received an influenza ("flu") vaccine.  *Id.*  Five days thereafter, on November 1, 2011, he complained to his personal care physician about symptoms of illness since receiving the inoculation, citing nasal congestion, runny nose, and an upper respiratory tract infection.  *Id.* Contemporaneously he told a registered nurse that he had "nasal drainage, sinus headache, body aches, coughing, and a fever of 100 degrees."  *Id.*  He had taken Tamiflu, but it did not help his symptoms, which instead worsened.  *Id.*

On November 2, 2011, petitioner visited the Allina-Cambridge Medical Center Emergency Department in Cambridge, Minnesota, complaining of shortness of breath, non-productive cough for the last nine days, tightness in his chest, and pain in his chest and back. *Rehn*, 2015 WL 9412813, at *2.  Mr. Rehn also denied having any chills or fever, which denial was contrary to his statements to the registered nurse the previous day.  *Id.*  Petitioner was examined by Dr. Jennifer A. Lessard, telling her that he had symptoms of rhinorrhea, sore throat, headache, and fatigue.  *Id.*  He again said his symptoms began nine days earlier.  *Id.*

Petitioner was transferred that same day to Abbot Northwestern Hospital in Minneapolis, where he was examined by Dr. Paul J. Odenbach.  *Rehn*, 2015 WL 9412813, at *2.  Petitioner's sister stated that his symptoms began after he started using a continuous positive airway pressure machine for the first time.  *Id.*  Petitioner was hospitalized from November 2-7, 2011, having been diagnosed with reactive airway disease and pneumonia.  *Id.*  On November 14, 2011, he was examined by physician's assistant Jenny Enstrom, who noted tightness in his chest, shortness of breath with occasional wheezing, and swelling in his lower legs.  *Id.*  He was diagnosed with pleurisy on December 1, 2011, after reporting a clear runny nose.  *Id.*

Petitioner was hospitalized again from December 2-11, 2011 for acute pancreatitis. *Rehn*, 2015 WL 9412813, at *2.  On May 30, 2012, petitioner received a CT scan of his

pancreas, which scan his doctor determined did not show any evidence of pancreatitis. *Id.* at *3. The doctor further noted that his pancreatic enzymes were normal and that he had a history of chronic abdominal pain. *Id.* A subsequent exam on September 10, 2012 found cysts on his pancreas, but an endoscopic ultrasound did not show evidence of chronic pancreatitis. *Id.* An examiner saw petitioner again on June 3, 2013, noting that petitioner had started taking Norvasc in place of Lisinopril in October 2012 due to concerns that Lisinopril was causing his pancreatitis. *Id.* From March 25-28, 2014, petitioner again was hospitalized, this time for chest pain, and received a pacemaker and defibrillator. *Id.*

## B. *Procedural History*

Mr. Knutson is an attorney practicing in Mankato, Minnesota. *See* Knutson's Aff. and Mem. in Opp'n to Resp't's Mot. for Review ("Knutson Aff."), ECF No. 43. He was contacted by Mr. Rehn around May 19, 2014, investigated Mr. Rehn's complicated medical history, *see Rehn*, 2015 WL 9412813, at *2-3, and filed a vaccine petition for Mr. Rehn on October 20, 2014, *see* Pet., ECF No. 1. The petition alleged that Mr. Rehn had received a flu vaccine on October 26, 2011 and afterward became symptomatic. Pet. ¶¶ 4-14. The petition specifically alleged that the vaccine caused "reactive airway disease, acute respiratory distress, tachypnea, pneumonia, pleurisy, and pancreatitis." Pet. ¶ 12. Shortly thereafter, on November 5, 2014, Mr. Knutson submitted a large volume of medical records related to Mr. Rehn's case. *See* Notice of Intent to File on Compact Disc, ECF No. 7. Upon reviewing the medical records, the special master noted that they were "profuse and complex." Order of December 8, 2014, ECF No. 8. The special master further commented that Mr. Rehn's case had two problems. First, he would need to demonstrate that the time at which his symptoms began post-dated the administration of the vaccine, which was problematic given that petitioner told several doctors on November 2, 2011 that his symptoms began "nine days" earlier, thus placing the onset of symptoms two days prior to his October 26, 2011 vaccination. *Id.* at 5. Second, he would need to show that the "vaccine was a substantial factor in causing" his ailments. *Id.* at 6.

To prove cause, Mr. Knutson informed the special master on December 15, 2014 that "he would attempt to get an opinion from one of petitioner's treating physicians." *Rehn*, 2015 WL 9412813, at *1. As of that time, Mr. Rehn had told Mr. Knutson that "his treating doctors were willing and able to relate his injuries to the vaccination, and would be willing to put that in writing." Knutson Aff. ¶ 6. The special master held further status conferences on February 5, 2015 and February 20, 2015, during which conferences Mr. Knutson said he was "still waiting to hear back from two of petitioner's treating physicians." *Rehn*, 2015 WL 9412813, at *1. At some time near February 20, 2015, Mr. Knutson received a letter from Jenny Enstrom, the physician's assistant who attended to petitioner on November 14, 2011, saying she could not "directly relate Mr. Rehn's recent medical conditions with receiving the flu shot." *Id.* On March 6, 2015, Mr. Knutson "informed the [special master] that petitioner's treating doctors do not support petitioner's allegations that his symptoms were caused by the flu vaccine. [Mr. Knutson also] said he would speak with Mr. Rehn to see how he wanted to proceed." *Id.* Concurrently with seeking medical care from specialists, Mr. Rehn decided to move ahead with the case, and during "a status conference on May 13, 2015, Mr. Knutson reported that he was still trying to

obtain an expert report, and that he had an appointment to see a primary care physician in Illinois to discuss the case." *Id.*

Shortly after that status conference, Mr. Rehn decided to obtain new counsel and retained Ms. Widman to replace Mr. Knutson. On June 1, 2015, petitioner filed a motion to substitute counsel, ECF No. 15, which was granted the next day. New counsel, Ms. Widman, gathered additional medical records relating to Mr. Rehn's continued medical treatment and evaluations, and filed them on July 31, 2015 and August 5, 2015, ECF Nos. 18, 21, and 22, along with an amended petition on August 11, 2015, ECF No. 25. Then, on September 16, 2015, Mr. Knutson filed a motion for interim attorney's fees and costs. Request for Interim Fees, ECF No. 29. He sought attorneys' fees of $295 per hour for 26.6 hours of work, paralegal fees of $75 per hour for 50.6 hours of work, and costs of $2,510.65, for a total award of $14,152.65. *Id.* The government's opposition to an award of interim fees was filed on October 1, 2015, ECF No. 31. On December 1, 2015, the special master granted Mr. Knutson's motion.

Since retaining Ms. Widman, Mr. Rehn has continued to seek medical expert opinion. On October 30, 2015, he visited Drs. Paula Rackoff and Lauren Khanna at a New York University medical facility, asking them "if there are any antibodies to explain his illnesses." Medical Records at 4, ECF No. 36-1. Dr. Rackoff's records note a "possible autoimmune disorder," but do not appear to comment on vaccination. *Id.* at 7. Next, on December 14, 2015, Dr. Arthur Brawer of Long Branch, New Jersey evaluated petitioner and referred him to Massachusetts General Hospital, noting that "following an influenza vaccination . . . he developed a multisystem illness that is as yet undiagnosed" and that "I am highly suspicious that Mr. Rehn has IgG4-related disease." Medical Records at 1, ECF No. 38-1. In January 2016, Mr. Rehn was examined by Dr. John H. Stone at Massachusetts General Hospital. Medical Records at 13, ECF No. 44-1. Nonetheless, a definitive diagnosis as yet remains elusive. In due course, Ms. Widman filed records of these exams with the special master, who held status conferences on January 8, 2016 and March 22, 2016, and scheduled the next status conference for May 23, 2016. Order of March 22, 2016, ECF No. 48.

## JURISDICTION AND STANDARD OF REVIEW

The "Court of Federal Claims has jurisdiction to review an interim fee decision prior to the decision on the merits of the underlying claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1376 (Fed. Cir. 2010). When reviewing a special master's decision, the court may take any one of the following actions:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance
with the court's direction.

42 U.S.C. § 300aa-12(e)(2).  Determinations of law by the special master are reviewed *de novo*,
*Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009),
findings of fact are reviewed for clear error, *id.*, and discretionary rulings are reviewed for abuse
of discretion, *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1287-88 (Fed. Cir.
2011).

## ANALYSIS

A. *Compensation of Attorneys Under the Vaccine Act: 42 U.S.C. § 300aa-15(e)*

"To stabilize the vaccine market and facilitate compensation," Congress enacted the
National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, Title III, § 311(a), 100 Stat.
3756 (codified as amended at 42 U.S.C. §§ 300aa-1 to 300aa-34) ("Vaccine Act" or "Act").
*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011).  The Act establishes a federal trust fund that
is available to compensate a person who proves injury by a vaccine under "a no-fault
compensation program 'designed to work faster and with greater ease than the civil tort
system.'"  *Id.* (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269 (1995)).  Persons alleging
injury by a vaccine may file a petition in this court for monetary relief, the Department of Health
and Human Services acts as the respondent, and a special master of this court decides the
petitioner's case.  *Id.* (citing 42 U.S.C. § 300aa-11(a)(1), -12(d)(3)).  Motions for review of
special masters' decisions are heard by judges of this court.  *See* 42 U.S.C. § 300aa-12(e).

The Act also includes an "unusual scheme" for compensating attorneys who work on
these cases in this court; it prohibits them from charging their clients any fee for services in
connection with a vaccine injury petition.  *Sebelius v. Cloer*, __ U.S. __, __, 133 S. Ct. 1886,
1891 (2013) (citing 42 U.S.C. § 300aa-15(e)(3)).  Instead, attorneys' fees and costs are awarded
by the special master or court and are payable from the federal trust fund.  42 U.S.C. § 300aa-
15(e)(1).  If the petitioner prevails, reasonable attorneys' fees and costs are automatically
granted.  If the petitioner loses, then the special master or court "may" award "an amount of
compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any
proceeding on such petition if the special master or court determines that [1] the petition was
brought in good faith and [2] there was a reasonable basis for the claim for which the petition
was brought."  42 U.S.C. § 300aa-15(e)(1); *see Cloer v. Sec'y of Health & Human Servs.*, 675
F.3d 1358, 1362 (Fed. Cir. 2012) (holding that special master or court "may, in its discretion,
make such an award for attorneys' fees and costs if it determines that *the action* was brought in
good faith and that there was a reasonable basis for the claim for which the action was brought")
(quoting H.R. Rep. No. 99-908, at 21 (1986), 1986 U.S.C.C.A.N. 6344, 6362 (emphasis by
the court)), *aff'd*, *Sebelius v. Cloer*, __ U.S. __, 133 S. Ct. 1886; *see also PGBA, LLC v. United
States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004) ("[U]se of the permissive 'may' provides the Court
of Federal Claims with discretion in fashioning relief.").

This statutory process in Paragraph 300aa-15(e)(1) can be conceptually framed in three
steps.  *See, e.g.*, *Cloer*, 675 F.3d at 1362.  First, the special master asks whether the petition was

brought in good faith.  Good faith is a subjective belief that a vaccine claim exists, and there is a presumption that petitions are filed in good faith.  *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014).  Second, the special master asks whether there was a reasonable basis for the claim. "The presence of a reasonable basis is an objective consideration determined by the totality of the circumstances," *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011), including "'the factual basis, the medical support, and jurisdictional issues,' and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  If the answer to either of these two questions is "no," then the inquiry ends, and the special master denies the motion for attorneys' fees and costs.  Third, and only if the answer to both questions is "yes," the special master decides whether to exercise his or her discretion to award attorneys' fees and costs.  *Cloer*, 675 F.3d at 1362 (if the court finds good faith and reasonable basis, then the court may make the discretionary decision to award fees).  This discretionary third step is based on the circumstances of the case.  *McKellar*, 101 Fed. Cl. at 302 ("[T]he question is whether interim fees are warranted in the circumstances of this case.").

Under Paragraph 300aa-15(e)(1), an attorney may seek fees and costs in the interim, before a final judgment of the special master or court.  *See Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1351-52 (Fed. Cir. 2008); *see also Shaw*, 609 F.3d at 1374 ("In *Avera*, we held that the Vaccine Act permits the award of interim fees and costs, rejecting the government's argument that a fee award is only permissible after judgment under § 300aa-15.").  A motion for interim attorneys' fees and costs is analyzed under the same three-step framework discussed *supra*.  When deciding whether to award interim fees, the special master's application of step three – whether to exercise discretion – will as a matter of practicality but not as a matter of law be different from motions filed after a judgment.  That is because interim fee motions present facts and circumstances different from post-judgment motions.  In *Avera*, the Federal Circuit provided a non-exclusive list of factors that may influence the special master's decision whether to exercise discretion to award interim fees and costs.  *See Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012) (holding "the Federal Circuit in *Avera* and *Shaw* did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees").  The factors may include whether the vaccine proceedings "are protracted," require "costly experts," or have caused "undue hardship" or "delay."  *Avera*, 515 F.3d at 1352. But the special master may also consider any other pertinent circumstance.  For example, special masters might ask whether the attorney is still working on the case, has withdrawn from the case voluntarily, *McKellar*, 101 Fed. Cl. at 302 (considering withdrawal to be a factor in the analysis), or has been discharged by the client, *see Terrell v. Sec'y of Health & Human Servs.*, No. 13-334V, 2013 WL 8610026, at *1 (Fed. Cl. Spec. Mstr. Aug. 20, 2013) (awarding interim fees after petitioner ended representation and chose to continue litigation without counsel).  If there is an indefinite delay in "receiving fees . . . until the matter is ultimately resolved," it may be particularly appropriate to award interim fees to an attorney who has withdrawn or been discharged from representation.  *See Woods*, 105 Fed. Cl. at 154 (affirming interim fee award and finding circumstances warranted exercise of special master's discretion, noting that the special master found it was "unknowable" when the case would end).

B. *Application of 42 U.S.C. § 300aa-15(e) to This Case*

1. *Good faith.*

The special master determined that the petition was brought in good faith. *Rehn*, 2015 WL 9412813, at *4. There was no evidence rebutting the presumption of good faith, and the government does not contest this conclusion of the special master. *See* Hr'g Tr. 9:21-23 (Mar. 4, 2016), ECF No. 47 ("Respondent does not contest that [p]etitioner has the subjective good faith belief in his petition."); *see also* Resp't's Mot. at 5-6 (challenging only whether the claim had a reasonable basis).

2. *Reasonable basis.*

The special master also determined that there was a reasonable basis for the claim, considering the totality of the circumstances. *Rehn*, 2015 WL 9412813, at *4. Mr. Rehn's claim stems from a vaccine "covered in the Vaccine Injury Table." *Id.* at *5. To support this claim, Mr. Knutson submitted "voluminous" medical records. *Id.* at *4. These records show that Mr. Rehn's medical situation following the flu vaccination was and is "extremely complex" and "complicated." *Id.* And, these records suggest that petitioner became especially ill shortly after his vaccination. *Id.*

In arguing that Mr. Knutson did not have a reasonable basis for the claim, the government emphasizes that when the petition was filed, Mr. Knutson had not yet secured a medical opinion that the flu vaccine caused petitioner's injuries. Resp't's Mot. at 6-14. At the time he filed the petition, Mr. Knutson relied upon his client's statements that his doctors supported his case. Hr'g Tr. 27:19-24, 30:13-18; Knutson Aff. ¶ 6. The government further contends that even assuming Mr. Knutson had a reasonable basis at the time of filing, he lost any reasonable basis for his claim when on February 20, 2015, he received a letter from Jennifer Enstrom, the physician's assistant, saying she would not state that plaintiff's ailments were caused by the flu vaccine. *See Rehn*, 2015 WL 9412813, at *4-5.

In analyzing reasonable basis, the special master seemingly applied a standard that was very lenient. Among other things, she commented that "because the Vaccine Act allows counsel to bill only for time spent on the case after the petition is filed, petitioner's counsel cannot be expected to investigate his client's claims in great detail before the petition is filed." *Rehn*, 2015 WL 9412813, at *5. That comment goes too far. If an attorney does not actively investigate a case before filing, the claim may not have a reasonable basis and so may not be worthy of attorneys' fees and costs. *See Kegler v. Sec'y of Health & Human Servs.*, No. 13-544V, 2014 WL 1568837, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2014) ("Petitioner's counsel clearly failed to perform fundamental due diligence. Consequently, there was no reasonable basis for the filing of [p]etitioner's claim, and [p]etitioner is not entitled to fees and costs."). In this instance, however, the special master's award did not depend on her commentary about the generality of pre-filing investigations. Here, Mr. Knutson had gathered extensive medical records attendant to Mr. Rehn's claim, had formed a view of how Mr. Rehn's circumstances fit within the framework of the Vaccine Program, and had filed the petition and submitted the bulky medical records shortly after the petition was filed. On the basis of those records, the special master found as a

7

matter of fact that Mr. Rehn's medical history regarding his table injury claim was "extremely complex and voluminous." *Rehn*, 2015 WL 9412813, at *5. Mr. Knutson also kept the special master informed about the progress of the case and about his efforts to obtain a more definitive diagnosis and a medical opinion. When these factual findings are considered in combination, the court cannot say the special master erred in concluding there was a reasonable basis to file the petition. *Id.* And, it was reasonable for Mr. Knutson to look for an expert who could address Mr. Rehn's complicated etiology after learning on February 20, 2015 that one of Mr. Rehn's physicians could not testify to a direct causal link between the vaccination and Mr. Rehn's worsening condition. *Id.*[2] Overall, the court discerns no clear error in the special master's findings of fact underpinning her conclusion that Mr. Knutson had a reasonable basis both to file the petition for a table injury claim and then to pursue it while endeavoring to address complex issues of causation. Notably, the record shows that Mr. Knutson has done meaningful work on this case.

### 3. *Circumstances supporting the special master's exercise of discretion.*

The special master did not abuse her discretion in finding that an award of fees and costs was appropriate under the circumstances. The special master concluded it would be an "undue hardship" on Mr. Knutson, who withdrew at his client's request, to wait until the conclusion of this case for payment because "it may be months to years before an entitlement ruling is issued." *Id.* at *6. As of December 1, 2015, when the special master ruled on this issue, Mr. Rehn had recently consulted with specialists at a New York University medical facility and was about to undertake further consultations with specialists in New Jersey and then at Massachusetts General Hospital. *See supra*, at 4. Notwithstanding Mr. Rehn's claim to a table injury, the complex etiology has precluded an early resolution. The court agrees that the resulting indefinite delay in resolving Mr. Rehn's claim constitutes a hardship to Mr. Knutson.

The government argues that the "undue hardship" analysis must focus on hardship to the client Mr. Rehn, not the attorney Mr. Knutson. Resp't's Mot. at 17. But that argument is contradicted by precedents, which establish that the special master may consider any of the unique facts of a case when deciding whether to exercise her discretion to award fees. *See Avera*, 515 F.3d at 1352 (providing examples of factors to consider). Hardship to the attorney may be one such factor, or even the most salient factor, in this analysis. *Id.* (observing that the Vaccine Act is designed "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims"); *Woods*, 105 Fed. Cl at 154 (considering effect of delay on the attorneys); *Morris v. Sec'y of Health & Human Servs.*, No. 12-415V, 2014 WL 8661863,

---

[2]The special master also noted that Mr. Rehn had first contacted Mr. Knutson approximately five months before the statute of limitations ran on his claim, and that Mr. Knutson consequently was under some pressure to complete his investigation of the claim in a timely way. *Rehn*, 2015 WL 9412813, at *5. This timing, however, appears to have had little, if any, adverse effect on Mr. Knutson's investigatory activities because he was able to complete them without undue difficulty. That a causation opinion by treating and consulting physicians has proved to be problematic appears to have been largely attributable to Mr. Rehn's numerous adverse health symptoms and the resulting lack of clarity in deriving a singular diagnosis.

at *4 (Fed. Cl. Spec. Mstr. June 4, 2014) (considering harm to counsel caused by "delay receiving fees").

The government next argues that there is no harm in making Mr. Knutson wait for fees, postulating that his situation is comparable to that of a typical personal injury attorney. "[P]ersonal injury attorneys commonly advance litigation costs and only receive payment at the conclusion of a case, if their clients are victorious.  Personal injury law firms are able to sustain themselves despite the built-in delay and uncertainty regarding payments."  Resp't's Mot. at 17. This is a poor analogy.  Although personal injury attorneys may need to wait for months or years while prosecuting a case to resolution, they still retain some control over the pace of the case, unlike Mr. Knutson here.

The circumstances at hand support an award of interim fees and costs.  Mr. Knutson investigated the pertinent facts and circumstances before filing the petition, supported the petition with medical records, sought medical opinions on causation, and kept the special master informed of the fact that Mr. Rehn's medical complications were posing difficulties not only personally for Mr. Rehn but also for the progression of his claim.  Since the time when Mr. Rehn chose to replace Mr. Knutson, the case has proceeded actively but slowly, and the special master found it could be "years" before a resolution.  Under these circumstances, the special master did not abuse her discretion by awarding interim fees and costs.[3]

## CONCLUSION

The government's motion for review of the special master's decision awarding interim attorneys' fees and costs is DENIED, and the special master's decision to award interim fees and costs is AFFIRMED.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[3]The government has not asked this court to review the special master's conclusion that $14,152.65 was a reasonable amount of fees and costs.