REISSUED FOR PUBLICATION
NOV 28 2016
OSM
U.S. COURT OF FEDERAL CLAIMS

ORIGINAL

FILED
OCT 3 1 2016
OSM
U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 14-1012V
Filed: October 31, 2016
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GARRY REHN,

    Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

    Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Attorneys' fees and costs decision; respondent objects to fee award; lack of reasonable basis to go forward

Gary Rehn, North Branch, MN, *pro se*.
Adriana R. Teitel, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION DENYING FINAL ATTORNEYS' FEES AND COSTS[1]

    On September 16, 2015, petitioner filed a motion for interim attorneys' fees and costs after his former counsel, Randall G. Knutson, withdrew from the case. On December 1, 2015, the undersigned issued a Decision awarding interim fees and costs to petitioner. On April 20, 2016, petitioner filed a second motion for interim attorneys' fees and costs, requesting interim attorneys' fees and costs for both his counsel at the time, Phyllis Widman, and his former counsel, Mr. Knutson. Respondent filed a response to petitioner's interim fees motion on June 3, 2016, raising several objections to the undersigned awarding interim attorneys' fees and costs to Ms. Widman. Respondent, however, did not object to the undersigned awarding interim fees to Mr. Knutson. Therefore, on June 9, 2016, the undersigned issued a decision partially granting petitioner's motion for interim attorneys' fees and awarded petitioner $3,687.50 in fees for Mr. Knutson's work.

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the categories listed above, the special master shall redact such material from public access.

On August 30, 2016, the undersigned held a telephonic status conference with petitioner, then *pro se*, who asked the undersigned to dismiss his case in order to sue civilly. The undersigned granted petitioner's oral motion and dismissed the case for failure to prove a prima facie case. Judgement entered on September 30, 2016. Therefore, the above-captioned case is closed and petitioner's April 20, 2016 motion is in effect a motion for final, not interim, attorneys' fees and costs.

For the reasons set forth below, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs with respect to the fees and costs associated with Ms. Widman's work on this case.

## PROCEDURAL HISTORY

On October 20, 2014, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012), alleging that he suffered reactive airway disease, acute respiratory distress, tachypnea, fever, cough, shortness of breath, chest tightness, headache, body aches, dizziness and weakness, pneumonia, pleurisy, and pancreatitis caused by the influenza ("flu") vaccination he received on October 26, 2011. Pet. at 1. On November 5, 2015, petitioner filed numerous medical records on compact disc. Due to the number and complexity of the medical records that petitioner filed, the undersigned issued an Order on December 8, 2014, summarizing the medical records and identifying what petitioner must prove in order to prevail.

During a status conference on December 15, 2014, Mr. Knutson said he would attempt to get an opinion from one of petitioner's treating physicians. Mr. Knutson had not heard from two of petitioner's treating physicians by the next status conferences on February 5, 2015 and February 20, 2015. On March 6, 2015, Mr. Knutson informed the undersigned that petitioner's treating doctors did not support petitioner's allegations that his symptoms were caused by the flu vaccine. He said he would speak with Mr. Rehn to see how he wanted to proceed. In a status report filed on March 13, 2015, petitioner stated he was planning to continue in the Program and was seeking another medical opinion to support his case. During a status conference on May 13, 2015, Mr. Knutson reported that he was still trying to obtain an expert report, and that petitioner had an appointment to see a primary care physician in Illinois to discuss the case.

On June 1, 2015, petitioner filed a Motion to Substitute Attorney Phyllis Widman in place of Mr. Knutson. The undersigned granted petitioner's motion on June 2, 2015. On July 31, 2015, petitioner filed a letter written by Jenny Enstrom, PA-C, dated January 29, 2015. Med. recs. Ex. 11, at 2. In the letter, the physician's assistant stated she could not "directly relate Mr. Rehn's recent medical conditions with receiving the flu shot." Id.

Petitioner filed an amended petition on August 11, 2015, in which he alleged significant aggravation of an unidentified autoimmune disorder. See Am. Pet. pmbl.

On September 16, 2015, Ms. Widman filed a motion for interim attorneys' fees and costs on behalf of Mr. Knutson. After briefing, the undersigned granted petitioner's motion and awarded $14,152.65 in interim attorneys' fees and costs for Mr. Knutson's work. Respondent filed a Motion for Review of the undersigned's decision on December 31, 2015. The case was assigned to Judge Lettow. On March 30, 2016, Judge Lettow denied respondent's Motion for Review and affirmed the undersigned's decision to award interim attorneys' fees and costs for Mr. Knutson's work. See Rehn v. Sec'y of HHS, 126 Fed. Cl. 86 (Fed. Cl. 2016).

While the motion and the appeal were being decided, Ms. Widman continued to attempt to find an expert to support petitioner's case. On October 5, 2015, she requested and received an extension of 60 days to produce updated medical records. Ms. Widman explained in her motion that petitioner was travelling from Minnesota to New York for medical consultations in late October and would need time to file records from those visits. Petitioner filed these medical records on December 16, 2015 as Exhibits 17 and 18. On December 22, 2015, she filed a letter from Dr. Brawer, a doctor in New Jersey, referring petitioner to Massachusetts General Hospital for an evaluation of whether petitioner had an IgG-4-related disease.

The undersigned held a telephonic status conference with the parties on January 8, 2016. Petitioner's counsel said petitioner was being tested to determine whether he had IgG-4-related disease at Massachusetts General Hospital. If testing showed petitioner did have an Ig-G-4-related disease, petitioner's counsel explained, he was considering taking part in an IgG4-related systematic disease program at the hospital. On January 29, 2016, petitioner filed medical records from his visit to Massachusetts General Hospital. Med. recs. Ex. 20. These records showed that petitioner did not have an IgG-4-related disease or even active chronic pancreatitis or inflammation. Id. at 7.

During a status conference on March 22, 2016, the undersigned discussed the records from Massachusetts General Hospital. Petitioner's counsel explained she was considering retaining a toxicologist to write an expert report supporting petitioner's case. The undersigned explained that petitioner would need to be diagnosed with a condition before he attempted to prove causation.

On April 20, 2016, petitioner's counsel filed a Motion to Withdraw as Counsel from the case, citing "irreconcilable differences with the petitioner." Mot. to Withdraw at 1. The undersigned granted petitioner's counsel's Motion to Withdraw after a telephonic status conference on May 23, 2016.

Petitioner filed a second Motion for Interim Attorneys' Fees on the same date his attorney filed a Motion to Withdraw, requesting $22,830.00 in attorneys' fees for Ms. Widman, $3,687.50 in fees for Mr. Knutson, and $3,245.01 in attorneys' costs. Respondent filed a response to petitioner's interim fees motion on June 3, 2016, raising several objections to the undersigned awarding interim attorneys' fees and costs to Ms. Widman. Respondent, however, did not object to the undersigned awarding interim fees to Mr. Knutson. Therefore, on June 9, 2016, the undersigned issued a decision partially granting petitioner's motion for interim attorneys' fees

and awarding petitioner $3,687.50 in fees for Mr. Knutson's work during respondent's appeal of the undersigned's first interim fees decision. On June 14, 2016, the undersigned filed by her leave petitioner's reply to respondent's response, which Ms. Widman had sent to the undersigned's law clerk via email.

On June 6, 2016, the undersigned held a status conference with the parties. The undersigned explained to petitioner, now *pro se*, that he had not proven causation because he had not filed medical records or an expert medical opinion supporting his claim that the flu vaccine caused him to develop the injuries outlined in his amended petition.

On July 7, 2016, petitioner filed a second letter from Jenny A. Enstrom, PA-C. Ms. Enstrom wrote that petitioner "has been seen by two different specialists who do feel that [his] medical issues are directly related to the flu shot and that these are side effects." Enstrom letter dated June 21, 2016 at 1. Ms. Enstrom did not identify the specialists or explain whether she had spoken to the doctors directly. She further explained that she is "in family practice and does not specialize in these areas." Id.

The undersigned discussed Ms. Enstrom's letter during the next telephonic status conference on July 19, 2016. She explained to petitioner that Ms. Enstrom's letter did not prove his case because she is not a medical expert. The undersigned explained to petitioner that he could file opinions from the doctors identified by Ms. Enstrom in her letter.

Petitioner did not file opinions from his treating doctors. During the next telephonic status conference on August 30, 2016, petitioner explained that he had been unable to find a doctor to support his case. Petitioner asked the undersigned to dismiss his case in order to allow him to sue civilly. On August 30, 2016, the undersigned granted petitioner's oral Motion to Dismiss and dismissed his case for failure to prove a prima facie case.

This matter is now ripe for adjudication.

## FACTUAL HISTORY

Petitioner has a prevaccination history of elevated triglycerides. See Med. recs. Ex. 8, at 61, 133, and 178. He was diagnosed with chronic pain syndrome on May 25, 2011, approximately five months before he received the flu vaccine. Med. recs. Ex. 10, at 111. The day he received the flu vaccine, the PA noted petitioner had a history of anxiety, hypertension, lipid disorder, muscle cramps, hypertriglyceridemia, chronic pain, obstructive sleep apnea, and herniated disc. Med. recs. Ex. 3, at 1. Petitioner was also under family stress and had chronic back pain, herniated discs, muscle cramps in his calves, and a family history of high blood pressure. Id.

On November 1, 2011, petitioner telephoned his personal care physician and told Jennifer L. Victor he had been symptomatic since receiving the flu shot on October 26, 2011, six days earlier. Id. at 6. He complained of an upper respiratory infection, nasal congestion, and a runny

nose. Id. at 7. He told RN Alicia R. Johnson that he had symptoms including nasal drainage, sinus headache, body aches, coughing, and a fever of 100 degrees. Id. He had taken Tamiflu but it did not relieve his symptoms. Id. Petitioner said his symptoms were becoming progressively worse. Id.

On November 2, 2011, petitioner visited the Allina-Cambridge Medical Center Emergency Department complaining of shortness of breath, non-productive cough for the last nine days (two days before petitioner's vaccination), tightness of his right anterior chest, and pain going down his chest, back, and both sides. Med. recs. Ex. 4, at 1. He denied having any chills or fever, although he had reported these symptoms earlier to RN Johnson. Id. On the same day, petitioner visited Dr. Jennifer A. Lessard. Id. at 11. He told her his symptoms of rhinorrhea, sore throat, headache, and fatigue started nine days earlier, which would put the onset of the symptoms two days before he received flu vaccine. Id. at 12. Petitioner said that three days before the visit he felt like an elephant was sitting on his chest. Id. He was transferred to Abbott Northwestern Hospital. Id.

At Abbot Northwestern Hospital, petitioner saw Dr. Paul J. Odenbach. Med. recs. Ex. 5, at 1. Petitioner told Dr. Odenbach that his symptoms began nine days earlier, which again puts onset two days before his vaccination. Id. Petitioner's sister noted that the symptoms started after petitioner used his CPAP machine for the first time. Id. Petitioner was hospitalized from November 2-7, 2011 and diagnosed with reactive airway disease and pneumonia. Med. recs. Ex. 3 at 13.

During a doctor's visit on November 14, 2011, PA Enstrom noted petitioner had tightness in his chest, shortness of breath with occasional wheezing, and swelling in his lower legs and ankles. Id. During a visit on December 1, 2011, petitioner had a clear runny nose. PA Enstrom diagnosed him with pleurisy. Id. at 18.

From December 2-11, 2011, petitioner was hospitalized for acute pancreatitis. Med. recs. Ex. 5, at 31.

On May 30, 2012, petitioner visited Dr. Irshad H. Jafri, who conducted a CT scan of his pancreas. Med. recs. Ex. 3, at 99. Dr. Jafri did not find any evidence of pancreatitis in the CT scan. Id. Petitioner's pancreatic enzymes were normal. Id. Dr. Jafri concluded that petitioner had a history of chronic abdominal pain. Id. at 100.

PA Enstrom noted on September 10, 2012 that petitioner had cysts on his pancreas but an endoscopic ultrasound did not show evidence of chronic pancreatitis. Id. at 145.

On June 3, 2013, she noted that petitioner started taking Norvasc for high blood pressure in place of Lisinopril in October 2012 due to concerns that the Lisinopril was causing petitioner's pancreatitis. Id. at 207.

On March 25, 2014, petitioner went to the emergency room due to chest pain. A pacemaker and defibrillator were implanted. Id. at 276. Petitioner was hospitalized from March 25 to 28, 2014. Id.

On October 30, 2015, petitioner visited Dr. Paula Rackoff at New York University Langone Medical Center complaining of joint paints. Petitioner told the doctor he was visiting for a second opinion on whether "there are any antibodies to explain his illnesses." Med. recs. Ex. 17, at 3. After examination, Dr. Rackoff found that there was no evidence that petitioner had inflammatory arthritis. Id. at 6. However, due to his positive HLA-B27 result, Dr. Rackoff suggested that petitioner may want to be tested for Behçet's disease.[2] Id. Petitioner also underwent additional blood testing by Dr. Lauren Goldstein Khann, a gastroenterologist at New York University Langone Medical Center. See med. recs. Ex. 18.

On December 14, 2015, after evaluating petitioner "via referral by his vaccination filing attorney," Dr. Arthur E. Brawer wrote a letter to Massachusetts General Hospital's Ig-G4-Related Disease Program. Ex. 19. Dr. Brawer wrote that he was "highly suspicious that Mr. Rehn has Ig-G4-related disease." Id. He requested that Massachusetts General Hospital evaluate petitioner for Ig-G4-related disease. Id.

Petitioner visited Massachusetts General Hospital for IgG-4 testing in early 2016. Med. recs. Ex. 20. Petitioner was found to not "have any evidence of Ig-G4-[related disease]." Id. Testing also showed that petitioner did not have active chronic pancreatitis or inflammation. Id. at 7, 10. In fact, the doctors at Massachusetts General noted that while petitioner has a "convincing history for recurrent episodes of pancreatitis," after reviewing many of petitioner's medical records they were able to find only "references to his medical care over the past [five] years without the primary data." Id. at 10. Testing showed that petitioner had normal pancreatic enzymes when he was admitted to the hospital, but the doctors noted that "this can occur in chronic pancreatitis." Id. In the discharge report, Massachusetts General suggested that petitioner establish care with a rheumatologist and a primary care physician close to home. Id.

## DISCUSSION

### I. Entitlement to Fees Under the Vaccine Act

#### a. Legal Standard

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there

---

[2] Behçet's syndrome is "a variant of neutrophilic dermatosis of unknown etiology, involving the small blood vessels, characterized by recurrent aphthous ulceration of oral and pharyngeal mucous membranes and genitalia, with skin lesions, severe uveitis, retinal vasculitis, optic atrophy, and often involvement of the joints, gastrointestinal system, and central nervous system." Dorland's Illustrated Medical Dictionary, 1822 (32d ed. 2012).

was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules. It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9.

Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). However, as Chief Judge Campbell-Smith noted in her affirmance of Special Master Moran's decision not to award attorneys' fees in Chuisano, "Fee denials are expected to occur. A different construction of the statute would swallow the special master's discretion." Chuisano v. United States, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014). See also Dews v. Sec'y of HHS, No. 13-569V, 2015 WL 1779148 (Fed. Cl. Spec. Mstr. Mar. 30, 2015) (in which the undersigned found petitioner was not entitled to attorneys' fees and costs because she did not have a reasonable basis to bring the petition).

Moreover, while a petitioner may have reasonable basis to file a petition, reasonable basis can be lost as the case develops. In Perreira, the Federal Circuit upheld a special master's decision awarding attorneys' fees and costs only up until the hearing began. Perreira v. Sec'y of HHS, 33 F.3d 1375, 1377 (Fed. Cir. 1994). The special master found that petitioners should have realized that they did not have reasonable basis to move forward with the case once they reviewed their expert's opinion prior to the hearing and saw the opinion was unsupported by medical literature or studies. Id. The Federal Circuit noted that "Congress must not have intended that every claimant . . . collect attorney fees and costs" because the funds that are payable under the statute are limited. Id. at 1377.

### b. Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that

7

the petition was filed in good faith. Grice, 36 Fed. Cl. at 121; Resp't's resp. at 7. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is satisfied.

Petitioner also had a reasonable basis to bring his claim. This reasonable basis continued during the initial period of the prosecution of petitioner's case, up until his first attorney, Mr. Knutson, withdrew. The undersigned's earlier finding that a reasonable basis existed until this point was upheld by Judge Lettow. See Rehn, 126 Fed. Cl. 86.

### i. Petitioner lacked a reasonable basis to move forward with his claim once Mr. Knutson was unable to find expert support for his case

In his reply, petitioner argues that because "reasonable basis was already established and interim fees and costs were awarded to previous counsel, Randy Knutson," reasonable basis is already established and "respondent's opposition is unnecessary." Pet'r's reply at 2. However, as the Federal Circuit held in Perreira, a claim that is supported by reasonable basis at the beginning of the case can lose the support as the case develops. 33 F.3d at 1377. Here, petitioner's first attorney made numerous attempts at finding expert support for petitioner's case. Petitioner's prior counsel first reported he was attempting to find an expert to support the case during a status conference call on December 15, 2014. Once he consulted with petitioner's treating doctors and found that they were unwilling to support petitioner's claim, he attempted to find support from medical experts. During a telephonic status conference on May 13, 2015, petitioner's then-counsel explained he was speaking with a doctor in Illinois about writing an expert report in support of petitioner's claims. This support never materialized. Mr. Knutson appropriately withdrew on June 1, 2015 when he realized that he would be unable to find expert support for the case. In total, Mr. Knutson spent approximately seven months attempting to find expert support for petitioner's case, but ultimately failed to do so.

Ms. Widman continued these efforts, but, again, she was unable to find expert support for petitioner's case. She had her client visit doctors in New York, New Jersey, and Massachusetts for testing but the doctors were ultimately unable to diagnose petitioner with a condition. See generally med. recs. Exs. 17-20. She then discussed the case with a toxicologist. See Order dated March 22, 2016. These discussions were premature because petitioner had not been diagnosed with a condition or illness. Just like Mr. Knutson, after numerous attempts at finding expert support for petitioner's case, Ms. Widman withdrew when she could not find expert support.

Finally, Mr. Rehn himself attempted to find expert support. He filed a letter from a physician's assistant, Ms. Enstrom, which did not qualify as expert support because Ms. Enstrom is not a doctor and did not provide a reliable theory for how the flu vaccine could have caused petitioner's putative injuries. After several attempts of his own at finding an expert to support his case, petitioner saw that he would be unable to do so and chose to dismiss.

As petitioner notes in his reply, reasonable basis is "objective, looking not at the likelihood of success of a claim, but more to the feasibility of the claim." McKellar, 101 Fed. Cl.

at 303. Therefore, the fact that petitioner was ultimately unable to find expert support for his case is not, by itself, determinative. Instead, the undersigned must assess whether petitioner's case had a reasonable basis at the time Ms. Widman was evaluating whether to represent petitioner and move forward with his claim.

Ms. Widman should have been on notice that reasonable basis would likely be at issue in this case after Mr. Knutson, an attorney experienced in the Vaccine Program,[3] was unable to find support for the case after Mr. Knutson spent seven months searching. This is not to say that reasonable basis can never be found after initial counsel withdraws from a case. However, counsel should be constantly evaluating whether a case is supported by reasonable basis, as it can be lost due to developments in the case. Perreira 33 F.3d at 1377. It is even more imperative for prospective counsel to evaluate reasonable basis once an attorney withdraws from a case, as the withdrawal signals that the case may lack a reasonable basis to move forward. In these situations, counsel may want to take extra steps to evaluate whether the case is supported by reasonable basis beyond simply thoroughly reviewing the potential client's medical records. Depending on the case, counsel may choose to speak with the potential client's former counsel, ask a medical expert to take a look at the case, or see the results of certain medical tests before he or she agrees to take the case. This is not to say that vaccine attorneys should be "apprehensive about representing clients who had previous attorneys." Pet'r's Reply at 4. However, further investigation may be prudent in these situations as counsel bears the risk that petitioner may not have reasonable basis to move forward with the claim.

From a review of the billing records and petitioner's reply, it does not appear that Ms. Widman took these extra steps. Ms. Widman puts a great deal of emphasis on the temporal closeness between petitioner's receipt of the flu vaccine and alleged onset of his symptoms. She argues that petitioner's claim "was feasible due to the temporal relationship between his onset of symptoms and the date of the vaccine." She also explains that "petitioner was adamant about feeling completely well the morning of and prior to receiving the vaccine and then, after receiving the flu vaccine on October 26, 2011, he felt sick." Id. at 3. However, the Vaccine Act does not permit the undersigned to rule for petitioner based on his claims alone, "unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Temporal proximity between vaccination and petitioner's putative injury alone "does not provide evidence of causation-in-fact; nor is it sufficient to create a reasonable basis to support a claim." Chuisano, 116 Fed. Cl. at 291.

Petitioner also points to the complexity of his medical records in order to try to convince the undersigned to award fees for Ms. Widman's work. Pet'r's Reply at 3 (referring to "voluminous medical records"). It is true that both the undersigned and Judge Lettow considered petitioner's complex medical history as a factor militating in favor of awarding fees to petitioner for his initial counsel's work on the case. However, the volume of petitioner's medical records was a factor only due to the impending statute of limitations deadline, which many judges and special masters have found to be relevant in determining reasonable basis. See Rehn, 126 Fed.

---

[3] According to the report function on CM/ECF, Mr. Knutson has had approximately 30 cases in the Vaccine Program, while Ms. Widman has had four cases in the program.

Case 1:14-vv-01012-CFL Document 69 Filed 11/28/16 Page 10 of 11

Cl. at 93; see also Chusiano, 116 Fed. Cl. at 287 ("the statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances."); Austin, 2013 WL 659574, at *9 ("special masters have recognized that the ability to investigate adequately a claim is constrained by the need to file quickly to preserve the claim, and have found the balance between these competing interests favors filing.").

When Ms. Widman took over the case, this statute of limitations factor was not an issue. Ms. Widman had ample time to review petitioner's medical records before choosing to represent Mr. Rehn. In fact, she had the benefit of having the undersigned's December 8, 2014 Order, in which the undersigned summarized the numerous medical records filed in the case and explained what petitioner would need to prove in order to prevail. See Order dated Dec. 8, 2014.

Ms. Widman argues that petitioner's case had merit because there was a possibility petitioner had an "underlying rheumatological condition due to prior discussions he had with his primary care physicians regarding his diagnosed Rosacea and other symptoms, as well as a positive HLA-B27 test, that can indicate an autoimmune disorder." Pet'r's Reply at 3-4. However, these indications of a possible autoimmune disorder were present when Mr. Knutson had the case, and he was unable to find expert support.

Moreover, in deciding whether there was a reasonable basis to move forward with the claim, Ms. Widman should have considered petitioner's pre-vaccination medical history of tobacco use, obesity, hypertriglyceridemia, hypertension, and chronic pain, as well as the fact that high triglycerides can cause pancreatitis, as noted in the undersigned's December 8, 2014 Order.

None of the factors discussed above would, on their own, defeat the reasonable basis that was present at the early stages of the case. However, based on the "totality of the circumstances," Ms. Widman should have realized that petitioner had lost reasonable basis to move forward with his allegations by the time she chose to represent him. McKellar, 101 Fed. Cl. at 303.

## CONCLUSION

The undersigned finds that an award of attorneys' fees and costs to petitioner for Ms. Widman's work on the case is inappropriate. Therefore, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs. The clerk of court is ordered to forward a copy of this decision to petitioner's former counsel, Phyllis Widman.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

Dated: October 31, 2016

*Laura D. Millman*
Laura D. Millman
Special Master